**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DIANE McCOY**, <br><br> Plaintiff, <br><br> v. <br><br> **GEICO INDEMNITY COMPANY**, <br><br> Defendant. | Civil Action No. 20-5597 (ZNQ) (TJB) <br><br> **OPINION** |

**QURAISHI, District Judge**

     **THIS MATTER** comes before the Court upon a Motion to Certify Class filed by Plaintiff Diane McCoy ("Plaintiff"). ("Class Motion", ECF No. 31.) Plaintiff filed a Memorandum in Support of her Class Motion. ("Class Moving Br.", ECF No. 32.) Defendant Geico Indemnity Company ("GEICO" or "Defendant") filed an Opposition to Plaintiff's Motion ("Class Opp'n", ECF No. 33) to which Plaintiff replied ("Class Reply", ECF No. 34).

     The Court will also consider Defendant's Motion to Strike Testimony and Reports of Josephine Augello. ("Motion to Strike", ECF No. 35.) Plaintiff filed an Opposition to Defendant's Motion to Strike ("Strike Opp'n", ECF No. 36), to which Defendant replied ("Strike Reply", ECF No. 37).

     The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Plaintiff's Motion to Certify Class and DENY Defendant's Motion to Strike Augello's Testimony and Reports.

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This matter was initiated on May 6, 2020 after Plaintiff filed her Complaint. ("Compl.", ECF No. 1.) The Complaint alleges that Defendant is an insurance provider and Plaintiff obtained insurance coverage for her vehicle from Defendant (the "Policy"). (Compl. ¶ 1.) Plaintiff thereafter suffered a total-loss of her insured vehicle and made a covered claim for physical damage under her Policy. (*Id.*) The Policy provides that for "Collision" and "Comprehensive" coverages, Defendant will pay for each "loss" to an "owned auto" or "non-owned auto." The comprehensive clause in the Policy provides:

> **Comprehensive (Excluding Collision)**
> "We will pay for each loss, less the applicable deductible, caused other than by collision, to the owned or non-owned auto. This includes breakage of glass and loss caused by:
> **Collision**
> 1. We will pay for collision loss to the owned or non-owned auto for the amount of each loss less the applicable deductible.

(*Id.*) (bold in original). The Policy defines "owned auto" as "a vehicle described in this policy for which a premium charge is shown for these coverages." (*Id.* ¶ 2.) The Policy defines "Loss," with respect to "Collision" and "Comprehensive" coverage, as "direct and accidental loss of or damage to (a) The auto, including its equipment; or (b) Other insured property." (*Id.* ¶ 3.) The Policy indicates that the limit of GEICO Indemnity's liability for loss, with respect to "Collision" and "Comprehensive" coverage, is "the actual cash value ("ACV") of the property at the time of the loss." (*Id.* ¶ 4.) The Policy defines "actual cash value" with respect to "Collision" and "Comprehensive" coverages, as "the replacement cost of the auto or property less depreciation or betterment." (*Id.* ¶ 5.)

Plaintiff alleges that under the Policy, Defendant's legal obligation to pay ACV on a first-party total-loss claim does not differ between a Collision total loss claim and a Comprehensive total-loss claim. (*Id.* ¶ 6.) In the event of a loss, including a total-loss, the Policy provides that

Defendant may either: (1) pay for the loss, or (2) repair or replace the damaged or stolen property. (*Id.* ¶ 7.) Plaintiff further alleges that as a matter of uniform procedure and process, when an insured suffers a total- losses, Defendant elects to pay for the loss, rather than repair or replace the damaged vehicle. (*Id.* ¶ 8.) When Defendant elects to pay for a total-loss, Defendant is obligated to pay the ACV of the total-loss vehicle. (*Id.* ¶ 9.) The Policy does not condition any aspect of coverage upon the purchase of a replacement vehicle or incurring costs associated with replacing the insured loss, whether a total or partial loss. (*Id.* ¶ 11.)

Of particular relevance to Plaintiff's claim in this case, the Complaint further alleges that Defendant does not pay the agreed-upon replacement costs such as title transfer fees and registration transfer fees (the "Transfer Fees")—mandatory vehicle replacement costs in New Jersey. (*Id.* ¶ 13.) Plaintiff asserts that by providing that Defendant will pay ACV in the event of a total-loss, Defendant promises to pay these mandatory vehicle replacement costs as part of its Collision and Comprehensive coverages. (*Id.* ¶ 17.) Defendant, "however, by its conduct alleged herein, breached its contracts with Plaintiff and the other Class members by failing to pay title transfer fees or registration transfer fees upon the total-loss of an insured vehicle." (*Id.* ¶ 18.)

Plaintiff alleges that she was subjected to Defendant's breach of contract following an auto collision in 2018 that rendered her vehicle a "total-loss" per the Policy. (*Id.* ¶¶ 20–21.) Defendant, through a third-party vehicle valuation provider, determined the vehicle had a base value of $3,777.00 and an adjusted value of $3,838.00. (*Id.* ¶ 22.) Defendant then added sales tax in the amount of $254.27 and subtracted the $500.00 deductible for a total of $3,592.27, but did not include any amount for title transfer or registration transfer fees which, according to Plaintiff, is a breach of the Policy. (*Id.* ¶ 23.)

Based on the foregoing allegations, Plaintiff now seeks certification of a class pursuant to Fed. R. Civ. P. Rule 23, defined as follows:

> All persons: (a) who insured a vehicle for physical damage coverage under a New Jersey automobile insurance policy issued by GEICO Indemnity that provided for an Actual Cash Value payment in the event that a vehicle was declared a total-loss, (b) who made a claim under the policy for physical damage, (c) whose claim was adjusted as a total-loss within the six-year time period prior to the date on which this lawsuit was filed until the date of any certification order, and (d) who were not paid the costs of title transfer fees or registration transfer fees.

(*Id.* ¶ 28.) Plaintiff argues in her Motion that the proposed class satisfies Fed. R. Civ. P. 23(a) ("Rule 23(a)") because the class is numerous, there are questions of law and fact common to the class, the class representative's claims are typical of the class, and Plaintiff and counsel will adequately represent the class. (Class Moving Br. at 11–15.) Plaintiff also argues that the proposed class has satisfied Fed. R. Civ. P. 23(b)(3) because the common question that will control the outcome of this litigation—whether GEICO's failure to include Transfer Fees constitutes a breach of contract—is a question of law that is common to class members and predominate over any questions affecting only individual members. (*Id.* at 18.)

## II.   **LEGAL STANDARD**

### 1. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("*Dukes*") (interior quotation marks omitted). To invoke this exception, every putative class action must satisfy the requirements of Rule 23. Specifically, each proposed class must first satisfy the four requirements set forth in Rule 23(a), and then meet the conditions of Rule 23(b), (2), or (3). A class may be certified pursuant to Rule 23(a) when: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

4

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

These four requirements are customarily referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. *Dukes*, 564 U.S. at 349. With respect to Rule 23(b), Plaintiff here seeks to certify a class under Rule 23(b)(2), which is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[T]he requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008). A plaintiff bears the burden "of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). This requires "actual" not "presumed" conformance with Rule 23's requirements. *Id*. "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide*, 552 F.3d at 309 (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

2. Striking Testimony and Reports

Fed. R. Civ. P. 26(a)(2)(B) provides that, unless otherwise stipulated or ordered by the court, a party's disclosure of the identities of its expert witnesses must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;

5

>> (ii) the facts or data considered by the witness in forming them;
>
>> (iii) any exhibits that will be used to summarize or support them;
>
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

### III.   DISCUSSION

#### A.   CLASS CERTIFICATION

##### 1.   Standing

"In the context of a class action, Article III must be satisfied by at least one named plaintiff." *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 359 (3d Cir. 2015). In order to establish standing, there must be "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Martinez-Santiago v. Pub. Storage*, 331 F.R.D. 94, 99 (D.N.J. 2019). In order "[t]o establish injury-in-fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id*.

Defendant argues that Plaintiff lacks standing as Plaintiff has suffered no concrete injury because any additional amounts included in her total loss settlement would have been paid to her

lienholder, not to Plaintiff. (Class Opp'n at 6.) In response, Plaintiff makes clear that she has sufficiently alleged an injury because she alleges that she was underpaid for her insurance claim for property damage—a result of Defendant's breach of contract—causing her a financial detriment. The Third Circuit's "standing cases uniformly recognize that allegations of injury are sufficient to invoke jurisdiction of a court." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65 (1987). "Economic injury may also establish standing." *GI Corp. v. Nu-Tek Elecs. & Mfg.*, Civ. No. 93-3854, 1996 WL 442790, at *2 (E.D. Pa. July 31, 1996). Moreover, the Court in *Lewis v. Gov't Emples Ins. Co.*, Civ. No. 18-5111, 2022 WL 819611, at *7 (D.N.J. Mar. 18, 2022), on almost identical facts to this matter found, that the plaintiffs had standing by claiming that defendant GEICO undervalued and underpaid their total-loss claims. Accordingly, the Court finds that Plaintiff in this case has sufficiently articulated an injury-in-fact and therefore has supported her standing to bring this suit.

    2.    <u>Numerosity</u>

Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Third Circuit, there is no minimum number of plaintiffs to maintain a suit as a class action, and a plaintiff can generally satisfy the numerosity requirement by establishing that the potential number of plaintiffs exceeds forty (40). *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 485 (3d Cir. 2018).

At the outset, the Court notes that Defendant does not dispute that Plaintiff meets the numerosity requirement. Plaintiff has determined that there were 38,579 first-party physical damage claims adjusted by Defendant as total losses between May 6, 2014 and June 18, 2020. (Pl. Ex. E, Defendant's Response to Interrog. No. 6.) By Defendant's own admission, its general practice was not to pay Transfer Fees on such claims prior to January 1, 2020. (*Id.* at No. 1; Class Opp'n at 4.) Even if all of the claims that occurred after Defendant changed its business practice

in January 2020 were afforded Transfer Fees,[1] the class members that did not receive these fees still comfortably exceed the 40 minimum required by the Third Circuit. Accordingly, numerosity is satisfied. *See In re Bulk Graphite Prods. Antitrust Litig.*, 2006 WL 891362, at *5 ("A court may accept common sense assumptions in finding that numerosity has been met."); *see also, Lewis*, 2022 WL 819611, at *7.

        3.     Commonality

"Commonality" is a consideration of whether there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "Commonality is satisfied when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). Where, as here, a plaintiff moves for certification under Rule 23(b)(3), which requires an assessment of whether common questions predominate, the predominance inquiry subsumes this element of commonality. *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Accordingly, the Court addresses this factor as part of its consideration of the predominance inquiry, below.

        4.     Typicality

Under Rule 23(a)(3), the class representatives' claims must be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). This "ensures the interests of the class and the class representatives are aligned so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427-28 (3d Cir. 2016) (internal quotations omitted). The Third Circuit has described typicality as having a "low threshold." *Id*. "Even relatively pronounced factual differences will generally not preclude a

---

[1] Plaintiff claims that the data suggests that Defendant paid title and/or registration fees on less than 3,500 claims—the vast majority of which occurred after its change in business practice in January 2020—but she does not cite to any record that would support her claim. (Class Moving Br. at 11.) The Court is nonetheless entitled to accept common sense assumptions in finding that numerosity has been met by assuming that the majority of claims before January 2020 were not afforded Transfer Fees. *In re Bulk Graphite Prods. Antitrust Litig.*, Civ. No. 02-6030, 2006 WL 891362, at *5 (D.N.J. Apr. 4, 2006).

finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id*.

Plaintiff contends that typicality is met. Plaintiff purchased auto insurance from Defendant. (Pl. Ex. A, Insurance Policy.) By Defendant's own admission, the insurance policy and Defendant's practices of not providing Transfer Fees after total-loss classifications before January 2020 are uniform. (Pl. Ex. B, Brand Decl., ¶ 4; Pl. Ex. D, Deposition of Ryan Brand, ("Brand Dep."), 49:12–51:6.) Plaintiff was involved in an accident that rendered her vehicle a total-loss. Plaintiff argues that the Policy, which promises to pay the ACV—the replacement cost—of the vehicle should include the costs of New Jersey's mandatory Transfer Fees. According to Plaintiff, failure to reimburse for these fees is a breach of the contract. These are the same claims brought by the class. All class members are GEICO policy holders for auto coverage whose vehicles were deemed total-losses. Before January 2020, Defendant underpaid all class members' total-loss claims by failing to pay them the full "replacement cost . . . . less depreciation" by failing to pay the full cost of Transfer Fees. (Compl., ¶¶ 17–18; Pl. Ex. G, Deposition of David Antonacci, ("Antonacci Dep."), Ex. 3.)

Defendant's position is that Plaintiff's claims are not typical of the class because Plaintiff has different factual and legal positions from other class members. (Class Opp'n at 14.) Specifically, Defendant argues that "Plaintiff's theory hinges on [Defendant] invoking its ACV limitation because the "cost to repair exceeds the ACV of the vehicle," but there are many circumstances where the repair costs did not exceed the ACV, but the claim was settled as a total loss regardless (e.g., theft of a vehicle)." (*Id.*) Defendant argues that those claims where the "ACV" limitation was not invoked are in a markedly different factual and legal situation, potentially involving entirely different policy provisions not raised by Plaintiff. (*Id.*)

9

Defendant's argument however is not persuasive. Plaintiff's claim is based on the same legal theory and challenge the same uniform conduct: breach of identical insurance contracts by failing to include Transfer Fees in ACV payments. *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims"). Moreover, typicality does not require the claims of the Plaintiff and class members to be "the same." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 107 (D.N.J. 2012). Rather, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal*, 43 F.3d at 58. The Court nonetheless determines that Plaintiff's claims are typical of the class claims. Accordingly, typicality is satisfied.

### 5. Fair and Adequate Class Representation

The fair and adequate class representation requirement is two-pronged. First, the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Second, the plaintiff must not have interests antagonist to those of the class. *Id.* In short, this requirement is to ensure that there are not conflicts of interest between the named parties and those they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiff's attorneys appear to the Court to be qualified, experienced, and able to conduct this litigation. Second, the Court does not see any outstanding conflicts of interest between the named parties and those they seek to represent. Plaintiff has testified and responded to discovery requests. It appears that she is ready and able to prosecute this case on behalf of her fellow class members. This requirement is also satisfied. *See Lewis*, 2022 WL 819611, at *7 (using all of the aforementioned factors to determine that the proposed class would be fairly and adequately

10

represented by the plaintiffs.). Defendant argues that a class action will waive class members' claims for additional amounts or fees because Plaintiffs only seek minimum registration fees, and there are more claims to be had. (Class Opp'n at 11–13.) "However, Rule 23 does not require Plaintiff to bring every conceivable claim, and the scope of any judgment or settlement would necessarily be limited to the specific practices at issue." *Lewis*, 2022 WL 819611, at *7 (citing *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 326 (3d Cir. 1998)).

### B. RULE 23(b)(3)

Plaintiffs seek certification pursuant to subsection (b)(3), which provides for certification if:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> A. the class members' interests in individually controlling the prosecution or defense of separate actions;
> B. the extent and nature of any litigation concerning the controversy already begun by or against class members;
> C. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> D. the likely difficulties in managing a class action

1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 488 (3d Cir. 2015). In this inquiry, the Court must determine whether there are "reliable means of proving classwide injury," often with the help of experts. *Id*. (internal citation omitted). The predominance requirement is normally satisfied where plaintiffs have alleged a common course of

11

conduct on the part of the defendant. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).

"Issues common to the class must predominate over individual issues" such that the class is "sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311 (internal quotation omitted). Although courts may not decide cases on the merits at the class certification stage, the merits are very much at issue, as courts "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate." *Id*. (internal quotation omitted). Ultimately, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id*. (internal quotation omitted).

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (citing *Wal-Mart*, 564 U.S. at 350). Indeed, "the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 299-300 (3d Cir. 2011).

The predominant issue here is whether Defendant's auto insurance policy, under a uniform contract, included coverage for title transfer fees and registration transfer fees, and whether Defendant breached by not providing compensation for these fees. The resolution of this issue will be determined by common proof on the meaning of the subject contract language. Under New Jersey law, to state a claim for breach of contract, a plaintiff must plead that (1) the parties entered into a valid contract; (2) the defendant failed to perform its contractual obligation; and (3) as a result, the plaintiff sustained damages. *Lewis*, 2022 WL 819611, at *9. The Court finds that

common issues predominate as to these elements, such as whether or not the transfer fees should be covered by Defendant, and if so, the extent to which Defendant breached its Policy. The answer to these common questions depends on the legal interpretation of policy language that will almost certainly be resolved at the summary judgment stage of the litigation. *Travelers Prop. Cas. Co. of Am. v. Cont'l Ins. Co.*, Civ. No. 10-6320, 2014 WL 4105487, at *4 (D.N.J. Aug. 19, 2014) ("[U]nder New Jersey law, interpretation of insurance policy provisions is essentially a question of law and suitable for resolution on a motion for summary judgment.").

2. Ascertainability

To be certified, a Rule 23(b)(3) class must be currently and readily ascertainable in an "economical and administratively feasible manner." *Carrera v. Bayer Corp.*, 727 F.3d. 300, 306-07 (3rd Cir. 2013); *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 592-94 (3d Cir. 2012); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013). A class is ascertainable if it is (1) "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015). Although Defendant does not dispute the ascertainability of the proposed class, the class is nonetheless ascertainable. Plaintiff seeks to certify a class of Defendant's insureds who suffered a total loss and who were not paid transfer fees. Defendant has already produced data that identifies all insureds who suffered a total loss within the Class Period, and which reflects whether insureds were paid transfer fees. (Pl. Ex. G, Antonacci Dep., 7:2–10:24.) This data is stored in Defendant's data systems as part of its routine business practices. (*Id.*) (explaining that data from operational systems flows into backup systems where it is stored and retrievable). The data includes all components of the determination of actual cash value—base value, condition adjustment, sales tax, etc.—including title and registration fees.

(Pl. Ex. I, Phillips Decl., ¶ 3; Pl. Ex. G, Antonacci Dep., Ex. 3). Defendant then combined those two amounts for each claim in producing the data to arrive at the total amount of fees paid on the claim. (Pl. Ex. G, Antonacci Dep., 23:16–24:15). The data includes 38,581 claims. (Pl. Ex. I, Phillips Decl., ¶ 4). Plaintiff notes that, out of this amount, 2,665 were fully paid title and registration fees, and another 752 were paid the $4.50 in registration fees, but not any amount was paid for title transfer fees. (*Id*.). The Court finds that this compilation and organization of data satisfies the ascertainability requirement. *See Cave v. Saxon Mortg. Servs*., Civ. No. 11-4586, 2016 WL 5930846, at *8 (E.D. Pa. Oct. 11, 2016) (finding that a class identified through payment data was ascertainable).

### C. 23(g) CLASS COUNSEL APPOINTMENT

When a court certifies a class, it must appoint class counsel. Fed. R. Civ. P. 23(g). The factors the Court must consider are: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." *Id*. at 23(g)(1).

Plaintiff has proposed Plaintiff's counsel, of whom Rachel Dapeer and Mark DiCello appear to manage filings and correspondence with the Court in this matter. Defendant does not object to Plaintiff's proposal and the Court accepts the recommendation. Counsel have investigated and pursued these claims. Counsel also appears to have the requisite managerial and litigation experience. The Court sees no reason to disagree and appoints Plaintiff's Counsel Rachel Dapeer and Mark DiCello as class counsel.

### D. STRIKING TESTIMONY AND REPORTS

In its Motion to Strike, Defendant moves to exclude the testimony and Reports of Plaintiff's proposed expert Josephine Augello Raritan ("Augello"). Plaintiff offers Augello as an expert on New Jersey fee requirements for transfer of vehicle title and registration. Defendant argues, however, that Augello did not write a word of her Initial Report or Amended Report (the "Reports"), and did not even read them "word for word" in their entirety. (Motion to Strike at 1.) Interestingly, Defendant does not seek to strike Augello's testimony under Federal Rule of Evidence 702 or under *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), but instead brings its Motion to Strike as a sanction under Fed. R. Civ. P. 37. (*Id.*)

Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c). "Sanctions are not appropriate for failure to comply with Rule 26 when the failure is substantially justified or harmless." *D&D Assocs. v. Bd. of Educ. of N. Plainfield*, Civ. No. 03-1026, 2006 WL 1644742, at *4 (D.N.J. June 8, 2006). "The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977). Indeed, the Third Circuit has expressed a "distinct aversion" to the exclusion of evidence under Rule 37 absent evidence of "extreme neglect or bad faith on the part of the proponent of the testimony." *ABB Air Preheater, Inc. v. Regenerative Envt'l Equip. Co.*, 167 F.R.D. 668, 671 (D.N.J. 1996) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–93 (3d Cir. 1994)). Before excluding evidence under Rule 37, courts should consider: (1) the prejudice or surprise in fact of the party against whom the excluded evidence would have been

offered; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the Rule 37 sanctions would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness of the party failing to make a required disclosure. In re Paoli, 35 F.3d at 791 (quoting *Meyers*, 559 F.2d894).

As an initial matter, Rule 37(c) is invoked only as a sanction for a violation of Rule 26. Defendant seeks sanctions here for an alleged violation of Rule 26(a)(2)(B)'s requirement that an expert report be "prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). All that is needed to satisfy this requirement is that the report be based on the expert's prior substantive input, must reflect the testimony to be given by the witness, and must be signed by the witness. *Crowley*, 322 F. Supp. at 545 (holding that expert report was admissible because the expert offered "substantial input into what was put into the report"). Attorneys are authorized under the Federal Rules to provide "assistance to experts in preparing reports, and indeed, with experts such as automobile mechanics, this assistance may be needed." Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note (1993). Courts have also consistently held that there is no requirement for "the expert to be the person who actually puts pen to paper (or fingers to keyboard)." *Crowley*, 322 F. Supp. 2d at 545 (citation omitted). It is entirely permissible for "a party's attorney [to] reduce an expert's oral opinion to writing so long as the report reflects the actual views of the expert." *See In re Asbestos Prods. Liab. Litig.*, 714 F. Supp. 2d 535, 542 (E.D. Pa. 2010) (expert report admissible even though drafted by attorneys because it was "based on personal knowledge and [his] professional experience.").

Here, Augello's deposition testimony indicates that Augello did in fact provide prior substantive input, reflected her anticipated testimony, and was signed by the witness. Augello testified that she provided information to the attorneys through "email or telephone conversation

to give [the attorneys] the information" that was later included in the reports "that [she] scripted." (Pl. Ex. 1, Deposition of Josephine Augello, 59:11–19; 25:17–18.) Augello further testified that she provided in those communications her "day-in and day-out expertise regarding the uniform mandatory fees that are incurred in replacing a vehicle in the State of New Jersey," and that those opinions were then placed "in a report [] to be provided in a federal case." (*Id*. 118:5–119:21). Augello also stated that she relayed information to the attorneys, who then drafted the reports on her behalf. Specifically, Augello attested that "the opinions [she] expressed in [the reports] . . . are 100 percent [her] opinions." (*Id*. 124:3–8; 130:15–24). Although Augello admitted she did not "put pen to paper", she emphasized that the reports nonetheless expressed and reflected her views, which is sufficient to avoid the drastic measure of striking her Reports. Accordingly, the Court will deny Defendant's Motion to Strike Augello's Reports.

### IV.    CONCLUSION

For the reasons stated above, the Court will GRANT Plaintiff's Motion to Certify Class and DENY Defendant's Motion to Strike Augello's Testimony and Reports. An appropriate Order will follow.

Date: **April 13, 2023**

                                                        s/ Zahid N. Quraishi
                                                        **ZAHID N. QURAISHI**
                                                        **UNITED STATES DISTRICT JUDGE**